IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| CHARLA SMITH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 05-3101 |
| | ) | |
| JO ANNE BARNHART, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION

JEANNE E. SCOTT, U.S. District Judge:

Plaintiff Charla Smith appeals Defendant Commissioner of Social Security's (Commissioner) denial of her application for supplemental security income benefits under the Social Security Act. For the reasons set forth below, the Court reverses the decision of the Commissioner and remands this matter for further proceedings.

STATEMENT OF FACTS

Smith was born on September 12, 1969. She has a seventh grade education. Certified Record of Proceedings (d/e 11 & 12) (hereinafter R.),

1

at 407.[1]  She worked as a waitress and banquet server until April 1998.  She stopped working because of severe pain in her lower back and hip.  In May 1998, she was referred to David Mack, M.D., an orthopedist.  Dr. Mack ordered X-rays, which showed mild degenerative changes in her back.  R. 356.  He diagnosed her as having disc disease with radicular pain.  R. 188.  She also saw a neurologist, M.L. Mehra, M.D.  He diagnosed her as having arthritis in her left hip.  R. 173.  In June and August 1998, Dr. Mack noted positive straight leg raising tests.  R. 198, 201.  In September 1998, Dr. Mack noted continued soreness, but negative straight leg raising tests and no weakness.  R. 196.  In November 1998, X-rays were taken, which showed no evidence of disc bulging.  R. 369.  An MRI showed mild disc bulging of doubtful clinical significance.  R. 370.

In December 1999, Smith continued to complain about lower back and neck pain.  X-rays showed no evidence of degenerative changes in the cervical spine.  In February 2000, Dr. Mack noted tenderness and positive straight leg raising tests and some muscle atrophy in her right quadriceps.  R. 376.

---

[1]At least one physician, Dr. Vittal Chapa, M.D., reported that Smith stated to him that she earned her GED.  R. 380.  She testified at the hearing in this case that she had a seventh grade education and did not earn a GED.  R. 407.

In March 2000, Vittal Chapa, M.D. performed a consultative examination. He found negative straight leg raising tests, a full range of motion in Smith's hip and knee, and normal lumbo-sacral spine flexion. Dr. Chapa concluded that his examination revealed no objective findings related to Smith's complaints. R. 380-81.

In April 2000, Dr. Mack noted that Smith had severe pain and soreness which were aggravated by physical therapy. R. 191. Dr. Mack prepared an assessment of her physical capacity. R. 383-84. He found that her ability to ambulate was very limited. He said that she had a limited range of motion in the lumbo-sacral spine. He opined that she could not lift more than five pounds on a repetitive basis, and was unable to sit, stand, or walk for more than ten to fifteen minutes at a time. Id.

Also in April 2000, Dr. Kevin Pratt, M.D., reviewed Smith's medical records and prepared a physical capacity assessment. Dr. Pratt found that the medical records did not establish any functional limitations at all. R. 386-93.

In May 2000, an MRI showed minimal diffuse disc bulging, which was unchanged from the 1998 MRI. R. 183. Also in May 2000, Dr. Mack wrote a note which stated that Smith was, "permanently and totally

3

disabled and unable to work." R. 385.

In approximately October 2000, Smith and her two children moved to Colorado to live with her brother. R. 404.[2] In April 2002, Smith began seeing Dr. Bethany Wallace, M.D. in Colorado. Dr. Wallace observed tenderness in Smith's lower back. R. 253. Diagnostic imaging showed mild beginning degenerative changes. R. 215.

In May 2002, Dr. Tim Moser, M.D., performed another consultative examination. R. 202-05. He observed negative straight leg raising tests and normal muscle and grip strength. R. 204. He found that Smith was restricted to standing or walking six hours out of an eight-hour work day, but found no restrictions on sitting. Id. He found that she could lift up to 20 pounds occasionally. He found that she had "frequent postural limitations on bending, stooping, and crouching." R. 205.

In January 2003, an MRI of Smith's lumbar spine was negative. R. 219. Dr. Wallace noted that Smith's hip was tender, but she had full range of motion with pain. R. 216. Dr. Wallace prepared a residual capacity form. Dr. Wallace opined that Smith could: (1) carry up to 10 pounds; (2)

---

[2]The record does not indicate the date on which Smith moved to Colorado. She testified, however, that she lived in Colorado for three years and returned to Illinois in October 2003. R. 404.

4

stand for zero to two hours at a time, for a total of two to four hours in an eight-hour work day; (3) sit for zero to two hours at a time, for a total of two to four hours in an eight-hour work day; (4) drive for ten minutes at a time; (5) occasionally squat, kneel, and reach, and (6) neither bend nor climb. Dr. Wallace also noted that Smith had diabetes and had to eat regularly. R. 216. Dr. Wallace also found some evidence of depression. R. 240.

In September 2003, Smith was examined by Dr. James Bee, M.D., a spine surgeon. Dr. Bee noted that Smith's X-rays and MRI studies were completely normal and showed no evidence of pathology. He said he would be unable to provide treatment for her symptoms. R. 233.

In December 2003, Dr. Mack completed a form provided by Smith's counsel. R. 255. The form quoted Listing 1.04A from the Social Security regulations. 20 C.F.R. Part 404 Subpart P, Appendix 1, § 1.04. If a person's impairments meet one of the Listings in the regulations, she is considered to be disabled without regard to her age, education or past relevant work experience. 20 C.F.R. §§ 404.1520(d), 416.920(d). Listing 1.04A states:

5

>1.04 Disorders of the spine:
>
>A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);

20 C.F.R. Part 404 Subpart P, Appendix 1, §1.04A.

Dr. Mack checked a statement on the form indicating that Smith's condition met the requirements of Listing 1.04A. He underlined the phrase "positive leg straight-leg raising test." R. 255. He did not give any other explanation of his opinion. He also checked the spot on the form that indicated that Smith was able to do less than sedentary work. R. 256-57.

In February 2004, Stephen Vincent, Ph.D., a psychologist, performed a psychological evaluation of Smith. He diagnosed Smith with a mood disorder with major depressive features and pain disorder. R. 278. He indicated in this evaluation that she had slight limitations on her ability: (1) to understand and remember short, simple instructions; (2) to carry out short, simple instructions; (3) to interact with the public; (4) to interact appropriately with supervisors; and (5) to respond appropriately to work pressures in a usual work setting. He found that she had moderate

limitations on her ability: (1) to understand and remember detailed instructions; (2) to carry out detailed instructions; (3) to make simple, work-related decisions; (4) to interact with co-workers; and (5) to respond to changes in a routine work setting.  R. 279-80.

The Administrative Law Judge (ALJ) held a hearing in this case on January 6, 2004.  Smith and a vocational expert testified at the hearing. Smith testified that she was unable to work.  She testified that she could only sit or stand for short periods of time, and was always in significant pain.  Smith's two children were ages nine and fifteen at the time of the hearing.  She testified that she and her children lived in Colorado with her brother for three years.  They moved back to Springfield, Illinois, in October 2003, to live with her parents.  In Colorado, they lived in an apartment. Smith had to walk up about seven steps to get to the front door of the apartment.  R. 404-05.

The ALJ asked Smith about her normal daily activities.  He asked her if she did any cooking.  She responded, "Not really." He asked her what she meant.  She responded, "Like if nobody is there, I'll make a sandwich . . . you know, or I'll open up a can of soup, throw it in the microwave.  I used to cook all the time.  I don't cook like I used to cook no more."  R. 423.

The ALJ also asked her if she did any laundry. She responded that her father did the laundry. She explained, "Well, he'll wash it and he'll bring it to me and I'll sit there and fold it . . . ." Id. The ALJ then asked her about washing dishes. She responded, "I try not to. You know, I mean, I'll rinse out a glass if I have to." R. 424. The ALJ asked her whether she went shopping. She testified that she went grocery shopping once or twice a week with her father. She explained that her father did all the lifting during the shopping. R. 426.

The ALJ then questioned the vocational expert, as follows:

> Q. Okay. I'm going to ask you some hypothetical questions and please disregard any information you may have gathered from reading the file or listening to the testimony, other than that which I give you specifically in the hypothetical. Assume the past work, the same as the Claimant's, exertional capacity limited to the full range of sedentary work except actually it's not a full range of sedentary. Let's say limited to five pound restriction and also a need for a sit/stand option and also no climbing of ladders, ropes, or scaffolds, other postural functions performed occasionally, need to avoid environmental hazards such as unprotected heights and dangerous machinery and also a limitation to the performance of simple and repetitive tasks. First of all, would I be correct in concluding that these restrictions would preclude return to any past work?
>
> A. Correct.

> Q. Okay. Then with respect to these limitations, you can now add the vocational factors by assuming that the hypothetical individual is of the Claimant's age, education and work history. In your opinion, would there be a number of jobs in the regional and/or national economy that such a person could perform?
>
> A. Yes.
>
> Q. Could you share those with me?
>
> A. Okay. Ticket checker, sedentary, 3,648, interviewer, sedentary, 935, information clerk, 863. There are sedentary, Cashier II's, 6,014 to name a few.
>
> Q. Okay. What would be -- to the extent you have to differentiate -- but with regard to the jobs you identified, what are the exact postural requirements for those jobs? For example, let's say if a doctor didn't want someone to, you know, said no one could engage in any bending as far as his work-related activities and obviously someone has to bend to sit down but, I mean, other than just, you know, going, getting to the work station and sitting down, would there be any additional bending or even climbing involved in these jobs?
>
> A. No.

R. 433-34.

The ALJ issued his decision on September 10, 2004. R. 16-23. The ALJ followed the five-step analysis set forth in the Social Security Administration Regulations (Analysis). 20 C.F.R. §§ 404.1520, 416.920. Step 1 requires that the claimant not be currently engaged in gainful

9

activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). If true, Step 2 requires the claimant to have a severe impairment. 20 C.F.R. §§ 404.1520(c), 416.920(c). If true, Step 3 requires a determination of whether the claimant is so severely impaired that she is disabled regardless of her age, education, and work experience. 20 C.F.R. §§ 404.1520(d), 416.920(d). The Listings of such severe impairments are set forth in the Listings. 20 C.F.R. Part 404 Subpart P, Appendix 1. The claimant's condition must meet the criteria in a Listing or be equal to the criteria in a Listing. 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the claimant is not so severely impaired, then Step 4 requires the ALJ to determine whether the claimant is able to return to her prior work considering her residual functional capacity (RFC). 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant cannot return to her prior work, then Step 5 requires a determination of whether the claimant is disabled considering her RFC, age, education, and past work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f). The claimant has the burden of presenting evidence and proving the issues on the first four steps. The Commissioner has the burden on the last step; the Commissioner must show that, considering the listed factors, the claimant can perform some type of gainful

employment that exists in the national economy. Knight v. Chater, 55 F.3d 309, 313 (7th Cir. 1995).

The ALJ determined that Smith met her burden at Steps 1 and 2 of the Analysis. She was not engaging in significant work and she had a severe impairment due to her degenerative disc condition, arthritis, diabetes and affective disorder. R. 17, 19.

The ALJ then determined at Step 3 that Smith's impairments did not equal any of the conditions found in the Listings. The ALJ specifically rejected Dr. Mack's opinion that she met Listing 1.04A. The ALJ stated:

> Dr. Mack's opinion concerning the claimant's listing level severity for Section 1.04 is contrary to the medical evidence of record. There is no objective finding that the claimant has nerve root compression, which is a required prong of 1.04A. Accordingly, in this case, regarding whether the claimant's impairment meets or equals listing level severity requirements, the undersigned disagrees and does not concur with Dr. Mack's opinion. The undersigned notes also that Dr. Mack has rendered inconsistent assessments of the claimant's condition.

R. 19 (citation to record omitted).

The ALJ then moved to Step 4. First, he analyzed Smith's RFC. He discounted Smith's testimony that she could not perform work at all due to her pain. He stated that her testimony regarding her daily activities was inconsistent with her claims. The ALJ stated:

11

> The claimant has reported and testified that she is raising two children, cooks, does dishes, folds laundry, and can grocery shop with her father. She . . . lived in an apartment where she had to go up to 7 steps daily. Accordingly, as her testimony, and reports of activities of daily living are inconsistent with her subjective allegations of being unable to work at any level or in any situation, the undersigned finds that the claimant is not fully credible.

R. 20.

The ALJ then determined Smith's RFC. He found that: (1) she could lift and carry frequently and occasionally up to five pounds; (2) she must have unrestricted sit/stand option at any work; (3) she must not engage in any climbing or bending; (4) she can perform other posture functions occasionally; (5) she must avoid unprotected heights and dangerous machinery; (6) she is limited to performing only simple, repetitive tasks; and (7) she also is limited to jobs where there is no requirement for crouching, reaching, stooping or bending. R. 20. Based on this RFC, the ALJ determined that Smith met her burden at Step 4 of the Analysis in that she could not return to her prior work as a waitress. R. 21.

The ALJ then moved to Step 5 of the Analysis. He determined, based on the vocational expert's testimony, that Smith could perform a substantial number of jobs in the national economy. He, therefore, concluded that she

was not disabled.  R. 22.  The Commissioner's Appeals Council denied Smith's request for review on March 18, 2005.  R. 9.  She then filed this action.

## ANALYSIS

This Court reviews the ALJ's decision to determine whether it is supported by substantial evidence.  Substantial evidence is, "such relevant evidence as a reasonable mind might accept as adequate" to support the decision.  Richardson v. Perales, 402 U.S. 389, 401 (1971).  This Court must accept the ALJ's findings if they are supported by substantial evidence, and may not substitute its judgment for that of the ALJ.  Delgado v. Bowen, 782 F.2d 79, 82 (7th Cir. 1986).  The ALJ further must articulate at least minimally his analysis of all relevant evidence.  Herron v. Shalala, 19 F.3d 329, 333 (7th Cir. 1994).  The Court must be able to "track" the analysis to determine whether the ALJ considered all the important evidence.  Diaz v. Chater, 55 F.3d 300, 308 (7th Cir. 1995).

The ALJ's determinations through Step 3 of the Analysis are supported by substantial evidence.  Smith was not gainfully employed, and she had a severe impairment.  Substantial evidence supports the conclusion that her condition did not meet any of the Listings, including Listing 1.04A,

quoted above. The evaluations of Drs. Chapa, Pratt, Moser, and Wallace are all consistent with the ALJ's conclusion that Smith did not meet this Listing. Furthermore, the imaging reports in the file showed minor problems with Smith's back. None demonstrated nerve root compression required by the Listing.

Smith argues that ALJ should be bound by Dr. Mack's statement that Smith's condition met Listing 1.04A. Dr. Mack was Smith's treating physician. The Commission gives controlling weight to a treating physician's statements on the nature and severity of an individual's impairments if those statements are supported by medically acceptable clinical and laboratory diagnostic techniques, and when those statements are not inconsistent with substantial evidence in the record. 20 C.F.R. § 404.1527(d)(2); SSR 96-2p. Smith argues that Dr. Mack's statement is supported by positive straight leg raising tests. Dr. Mack's finding of positive straight leg raising tests, however, was inconsistent with the findings of Drs. Chapa and Moser. Dr. Mack also, sometimes, found negative straight leg raising. Furthermore, Dr. Mack's statement is not supported by imaging and other testing in the record. Since some medical evidence is inconsistent with Dr. Mack's statement, the ALJ was not required to give it

controlling weight. The other medical evidence, particularly the findings of Drs. Chapa, Moser, and Wallace, provide substantial evidence for the ALJ's decision at Step 3.

The Court, however, cannot track the ALJ's reasoning at Steps 4 and 5 of the Analysis. The ALJ based his conclusions at Step 4 and 5 on his determination of Smith's RFC. His determination of Smith's RFC depended, in part, on his determination of the credibility of Smith's testimony regarding her condition. The ALJ said that her testimony regarding her inability to work was not credible because of the scope of her daily activities. He relied on his findings that she both cooked and washed dishes. There is no testimony to support these two findings. Smith said that she did not cook; she occasionally made a sandwich or heated up a can of soup in a microwave. She further testified that she did not wash dishes; at best, she occasionally rinsed out a glass. The Court must remand so that the ALJ can review his analysis of her credibility since his reliance on his description of her daily activities is inconsistent with her testimony in the record.

The Court also cannot track how the ALJ incorporated Smith's psychological limitations into Smith's RFC. Dr. Vincent found that Smith

15

had slight limitations on her ability: (1) to understand and remember short, simple instructions; (2) to carry out short, simple instructions; (3) to interact with the public and with supervisors; (4) to interact appropriately with supervisors; and (5) to respond appropriately to work pressures in a usual work setting.  He found that she had moderate limitations on her ability: (1) to understand and remember detailed instructions; (2) to carry out detailed instructions; (3) to make simple, work-related decisions; (4) to interact with co-workers; and (5) to respond the changes in a routine work setting.  The ALJ did not explain how he considered these restrictions and incorporated them into his formulation of her RFC.

The Commissioner argues that the ALJ incorporated these limitations into his analysis by limiting Smith to simple, repetitive tasks.  The ALJ, however, does not state this in his decision.  The Commissioner also argues that the slight and moderate limitations found by Dr. Vincent are not significant and so would not affect Smith's RFC.  Again, the ALJ did not make such a finding.  The Court, therefore, does not know if or how the ALJ considered Dr. Vincent's findings in his formulation of Smith's RFC.  The Court must remand because the ALJ did not account for the evidence.

THEREFORE, the Plaintiff's Motion for Summary Judgment (d/e 14)

is ALLOWED, and the Defendants Motion for Summary Affirmance (d/e 17) is DENIED.  The decision of the Commissioner is reversed and remanded for further proceedings consistent with this Opinion, pursuant to sentence four of 42 U.S.C. § 405(g).

IT IS THEREFORE SO ORDERED.

ENTER:   March 23, 2006.

       FOR THE COURT:

                                         s/ Jeanne E. Scott
                                    JEANNE E. SCOTT
                        UNITED STATES DISTRICT JUDGE